JESSE JEMMISON, RESPONDENT, v. NATHANIEL KENNEDY, APPELLANT.

*Attorney for the Seneca Nation of Indians — right of the Indians to employ another attorney in an action for assault and battery.*

In an action brought to recover for an assault and battery, both of the parties being members of the Seneca Nation of Indians, the jury estimated the damages of the plaintiff at the sum of $325.

An exception was taken by the defendant to the denial of a motion made by him for a nonsuit upon the ground that the plaintiff had brought the action by attorneys other than the "attorney of the Seneca Nation of Indians," in violation of section 2 of chapter 150, Laws of 1845.

*Held,* that the motion was properly denied, as, by section 14 of chapter 365 of 1847, any Indian of the said Nation who had any demand or right of action which exceeded the amount which might be awarded by the peace-makers, was authorized to maintain and prosecute actions in the courts of this State "in the same manner and with the like effect as between white citizens."

APPEAL by the defendant from a judgment, entered on the verdict of a jury, rendered at the Erie Circuit, in the office of the clerk of the county of Erie.

*F. J. Blackman,* for the appellant.

*C. W. Siekmon,* for the respondent.

DWIGHT, J. :

This was an action for assault and battery. The parties were both members of the Seneca Nation of Indians. The jury estimated the damages of the plaintiff at the sum of $325.

The only exception in the record is that taken by the defendant to the denial of his motion for a nonsuit, which was made on the sole ground that the plaintiff had brought his action by attorneys other than the "attorneys for the Seneca Nation of Indians." There are several reasons why the ruling excepted to, was correct:

1. The defendant's objection was, in effect, that the plaintiff had not legal capacity to sue. For, unless he was under some manner or measure of legal disability as a suitor, he might bring his action either in person or by the attorney of his choice. The objection was that the plaintiff had not legal capacity to sue as he had done in this action; that the action, to be maintained, must be brought by the attorney for the Seneca Nation. But this objection is one which must be pleaded either by demurrer or answer, or it is waived. (Code of Civ. Pro., § 499.) In this case the objection could not have been taken by demurrer, because it did not appear on the face of the complaint, but it might have been taken by answer, and not having been so taken, it was waived; and it was, therefore, properly overruled.

2. The objection was founded upon a provision of the act of 1845 (Laws of 1845, chap. 150, § 2), which provides for the appointment by the governor and senate of "an attorney for the Seneca Nation of Indians," and prescribes his powers and duties as follows : "He shall, from time to time, advise the said Indians respecting controversies between themselves, and between them, or any of them,

and any other person; he shall prosecute and maintain all actions, suits and proceedings for them or any of them as he may find necessary and proper." The question is whether this provision is exclusive, or whether other actions which the attorney for the nation does not find " necessary and proper " to bring may be brought by the Indian himself in person or by such attorney as he may choose.

In the early case of *Jackson* v. *Reynolds* (14 Johns., 335) a similar provision of statute in respect to the Brothertown, Oneida and Stockbridge Indians (Laws of 1813, chap. 92, § 27 ; 2 R. L., 153) was held to be exclusive of the right of the Indian to sue except by the attorney of his tribe ; but the reasons assigned for the holding are not applicable to the present status of the Indians, especially of the Seneca Nation, under legislation long subsequent to the date of that decision. That decision we find to have been based upon an assumed condition of tutelage and dependence of the tribes in question which rendered them incapable of alienating land or making contracts. The court, by SPENCER, J., says: " The power of the legislature to restrain these Indians from suing or being defended, except exclusively by the attorney appointed for them, is as unquestionable as is the right to prevent them from alienating their lands or declaring them disqualified from contracting. Indeed, assuming that they are incapacitated, from their mental debasement, to sell their individual lands, or to contract, it would seem essentially just and proper to provide for them a person learned in the law to manage their suits," etc.

Without stopping to inquire whether the legal status of the Indians was, at that time, one of such complete disability as that indicated by the language quoted, it is apparent that such is not the case at present. Much legislation has intervened, the object of which has been to elevate the character and improve the condition of these wards of the State, by encouraging in them a spirit of self-reliance and cultivating habits of industry, thrift and providence. (See opinion of BARKER, P. J., in *Crouse* v. *R. R. Co.*, 18 N. Y. St. Rep., 711.) Of these legislative acts two of the most important are those of 1843 (chap. 87) and 1847 (chap. 365), which illustrate the progressive character of our legislation on this subject, and the great advance already made upon the conditions existing at the date of the decison in *Jackson* v. *Reynolds*.

Section 4 of the act of 1843 (*supra*) provides : "Any native Indian may, after the passage of this act, purchase, take, hold and convey lands and real estate in this State, in the same manner as a citizen ; and whenever he shall have become a freeholder to the value of $100, he shall be liable, on contracts, and subject to taxation, and to the civil jurisdiction of the courts of law and equity, in the same manner and to the same extent as a citizen thereof. And the act of 1847 (§ 14) removes the last restriction upon the right of those Indians with whom we are concerned to sue each other in the courts of the State on all demands and rights of action exceeding the juris- diction of the peace-makers of the nation, which, by the same statute (§ 8) was fixed at the sum of $100. The text of section 14 is as follows : "For any demand or right of action which any Indian of the said nation may have against any other Indian, and which, according to the provisions of this act, exceeds the amount which may be awarded by the peace-makers, actions may be maintained and prosecuted in the courts of this State *in the same manner* and with the like effect as between white citizens."

There can, it would seem, be no question of the effect of this provision upon the rights of the Seneca Indians in the courts of this State. The enactment was subsequent to that which provided for the appointment of an attorney for the nation. (Act of 1845, *supra*.) The last-mentioned provision, if not more radically affected, must at least be rendered subordinate and auxiliary, merely, to that quoted from the act of 1847.

We conclude that the right of the plaintiff to sue the defendant in this action for a claim which, by the verdict of the jury was found to be in excess of $100, either in person or by his chosen attorney, was not subject to question, and, accordingly, that even had the defendant's objection been pleaded, it could not have been sustained.

The judgment should be affirmed.

All concur ; judgment affirmed.